1  MATTHEW R. ROGERS (SBN 128215)
   JOSEPH A. KAUFMAN (SBN 228319)
2  EMMA E. GRAGLIA (SBN 245851)
   **CARROLL, BURDICK & McDONOUGH LLP**
3  633 West Fifth Street, 51st Floor
   Los Angeles, CA 90071
4  Telephone:    213.833.4500
   Facsimile:    213.833.4555
5  Email:        mrogers@cbmlaw.com
                 jkaufman@cbmlaw.com
6                egraglia@cbmlaw.com

7  Attorneys for Defendant,
   FORD MOTOR COMPANY

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  DAVID MICHERY,                          No. CV12-04957 RSWL (FFMx)

12            Plaintiff,                     District Judge: Ronald S. W. Lew
                                            Magistrate Judge: Frederick F. Mumm
13       v.
                                            **DEFENDANT FORD MOTOR COMPANY'S**
14  FORD MOTOR COMPANY, a                   **MOTION FOR SUMMARY JUDGMENT, OR**
    Delaware corporation; BOARD             **IN THE ALTERNATIVE, DISMISSAL FOR**
15  FORD, a California entity, form         **SPOLIATION OF EVIDENCE;**
    unknown; and DOES 1 to 100,             **DECLARATION OF EMMA E. GRAGLIA;**
16  inclusive,                              **DECLARATION OF MARK HASSAN;**
                                            **EXHIBITS IN SUPPORT**
17            Defendants.
                                            **[FILED CONCURRENTLY WITH**
18                                          **SEPARATE STATEMENT OF**
                                            **UNCONTROVERTED FACTS AND**
19                                          **CONCLUSIONS OF LAW]**

20                                          Date:  August 6, 2013
                                            Time:  10:00 a.m.
21                                          Dept.: 21

22

23

24       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25       PLEASE TAKE NOTICE that on August 6, 2013 at 10:00 a.m.,

26  defendant Ford Motor Company ("Ford") will move this Court for an order

27  granting it summary judgment of plaintiff David Michery Complaint or, in the

28  alternative, imposition of the sanction of dismissal for spoliation of evidence. This

CBM-LA\LA114721                          -1-

1  Motion is made on the grounds that plaintiff has no evidence his injuries were

2  caused by a defect or negligence attributable to Ford.  Alternatively, plaintiff's

3  failure to preserve the subject vehicle as evidence in his intended lawsuit has so

4  severely prejudiced Ford as to deprive it of a reasonable opportunity for a fair trial.

5          Because there is no triable issue of material fact supporting plaintiff's

6  negligence or defect claim, summary judgment in favor of Ford is proper.

7  Alternatively, the imposition of the sanction of dismissal for spoliation of evidence

8  against plaintiff is proper because plaintiff failed to preserve the most critical piece

9  of evidence (the subject 1999 Ford Expedition) which he claims is defective.

10          This motion is made following the conference of counsel pursuant to

11  L.R. 7-3 which took place on June 3, 2013.  See, Declaration of Emma E. Graglia

12  ("Graglia Decl."), ¶ 2.

13          This Motion is based on this Notice of Motion, the attached

14  Memorandum of Points and Authorities, the Declarations of Emma E. Graglia and

15  Mark Hassan and Supporting Evidence, and the concurrently filed Separate

16  Statement of Undisputed Material Facts, together with the pleadings, records, and

17  other documents on file and upon such oral and documentary evidence as may be

18  presented at the hearing of this Motion.

19          Dated:  July 3, 2013

20                              CARROLL, BURDICK & McDONOUGH LLP

21

22                              By
                                        Emma E. Graglia
23                                  Attorneys for Defendant,
                                    FORD MOTOR COMPANY
24

25

26

27

28

CBM-LA\LA114721                              -2-

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS ...................................................................................I

POINTS AND AUTHORITIES ........................................................................1

I.    INTRODUCTION...................................................................................1

II.    UNDISPUTED FACTS .........................................................................3

III.   PLAINTIFF HAS NO EVIDENCE OF A VEHICLE DEFECT .................3

    A.    Devoid Discovery Responses...........................................................3

    B.    The Vehicle Was Never Inspected And No Longer Exists................6

    C.    Plaintiff Has No Evidence A Vehicle Malfunction Or Defect Exists Or Caused His Injuries .......................................................................7

    D.    Plaintiff Cannot Meet His Evidentiary Burden .................................9

    E.    Ford Has Been Denied Access to Key Evidence .............................13

IV.   IN THE ALTERNATIVE, THE SANCTION OF DISMISSAL IS APPROPRIATE FOR SPOLIATION OF EVIDENCE ...........................15

V.    CONCLUSION ...................................................................................19

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

Anderson v. Liberty Lobby, Inc.,
5    477 U.S. 242 (1986), 106 S.Ct. 2505, 91 L.Ed.2d 202 ..................................................9

6 Barker v. Lull Engineering Co., Inc.,
   20 Cal.3d 413 (1978), 143 Cal.Rptr. 225 ...............................................................8, 12
7
Barrett v. Atlas Powder Co.,
8    86 Cal.App.3d 560 (1978), 150 Cal.Rptr. 339 .............................................................13

9 Brown v. Parker-Hannifin Corp.,
   919 F.2d 308 (5th Cir. 1990) ........................................................................................12
10
Celotex Corp. v. Catrett,
11    477 U.S. 317 (1986), 106 S.Ct. 2548, 91 L.Ed.2d 265 ..........................................6, 8, 9

12 Chambers v. NASCO, Inc.,
   501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ..................................................18
13
Daly v. General Motors Corp.,
14    20 Cal.3d 725 (1978), 144 Cal.Rptr. 380 .....................................................................12

15 Fairbank v. Wunderman Cato Johnson,
   212 F. 3d 528 (9th Cir. 2000) .........................................................................................9
16
Henderson v. Harnischfeger Corp.,
17    12 Cal.3d 663 (1974), 117 Cal.Rptr. 1 ..........................................................................13

18 Jiminez v. Sears Roebuck & Co.,
   4 Cal.3d 379 (1971), 93 Cal.Rptr. 769 ...........................................................................9
19
Leon v. IDX Systems Corp.,
20    464 F.3d 951 (9th Cir. 2006) ..................................................................................16, 17

21 Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986), 106 S.Ct. 1348, 89 L.Ed.2d 538 .................................................9
22
Northwest Motorcycle Ass'n v. USDA,
23    18 F. 3d 1468 (9th Cir. 1994) .........................................................................................7

24 O.S.C. Corp v. Apple Computer, Inc.,
   792 F. 2d 1464 (9th Cir. 1986) .......................................................................................8
25
Silvestri v. General Motors Corp.,
26    271 F.3d 583 (4th Cir. 2001) ..................................................................................17, 18

27 Stephen v. Ford Motor Company,
   134 Cal.App.4th 1363 (2005), 37 Cal.Rptr.3d 9 .........................................................11

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

Thomas v. General Motors Corp.,
  13 Cal.App.3d 81 (1970), 91 Cal.Rptr. 301 ..................................................13

4

Tresham v. Ford Motor Co.,
  275 Cal.App.2d 403 (1969), 79 Cal.Rptr. 883 .............................................13

5

6

Triton Energy Corp. v. Square D Co.,
  68 F.3d 1216 (9th Cir. 1995) ..................................................................11, 12

7

Unigard Security Ins. Co. v. Lakewood Engineering & Mfg. Corp.,
  982 F.2d 363 (9th Cir. 1992) ..................................................................15, 16

8

9

Villiarmo v. Aloha Island Air, Inc.,
  281 F.3d 1054 (9th Cir. 2002) ......................................................................8

10

Zweig v. Hearst Corporation,
  521 F. 2d 1129 (9th Cir. 1975),
  *cert. denied,* 423 U.S. 1025 (1975) ..............................................................7

11

12

**Rules**

13

Federal Rules of Civil Procedure

14

  Rule 56...........................................................................................................9
  Rule 56(a) ...................................................................................................6, 8

15

  Rule 56(c) ...................................................................................................7, 8
  Rule 56(e) .....................................................................................................9

16

17

18

19

20

21

22

23

24

25

26

27

28

**POINTS AND AUTHORITIES**

## I.   INTRODUCTION

By this action, plaintiff David Michery claims a certain 1999 Ford Expedition ("subject vehicle") was not crashworthy. (See Ex. "A," plaintiff's complaint, ¶ 16.) The allegation stems from his single vehicle collision on April 15, 2010 in Hacienda Heights. (See Ex. "A," ¶¶ 8-9 and Ex. "B," CHP Traffic Collision Report ("TCR"), pg. 1.)

The collision occurred very early in the morning while plaintiff was driving southbound on Hacienda Boulevard. Plaintiff intentionally swerved to allegedly avoid another vehicle. His maneuver caused the subject vehicle to jump the raised center median curb and it ultimately impact an immoveable palm tree. He sustained fractures of his lower left leg. (See Ex. "B," TCR, pp. 9-10.) At his deposition, plaintiff testified he recalls essentially nothing about the incident except that he swerved left to avoid a phantom motorist. (See Ex. "C," plaintiff's deposition, p. 139, lns. 6-11, p. 140, ln. 10 - p. 141, ln. 7.) None of the known eyewitnesses, however, observed a second vehicle. (See Ex. "B," TCR, p. 9, Ex. "D," April Armas deposition, p. 16, lns. 4-7, and Ex. "E," Anyssa Armas deposition, p. 14, ln. 20 - p. 15, ln. 8.) Regardless, the CHP found Mr. Michery caused the collision by making an unsafe turning movement. (See Ex. "B," TCR, p. 10 and Ex. "F," CHP Officer Bryan Rose deposition, p. 82, ln. 24 - p. 83, ln. 2.)

Six months later, on October 15, 2010, plaintiff filed a "Claim For Damages To Person Or Property" against the County of Los Angeles. (See Ex. "G.") His claim states in pertinent part:

> "Mr. Michery was cut off by an unknown driver and was forced to slammed [sic] into a tree that increased the level of injury substantially . . . . The County is responsible for the negligent [sic] to public safety for improper installation of tree on surrounding areas."

After his claim was denied, on May 24, 2011, plaintiff filed a civil action (Los Angeles Superior Court case No. KC0612910) against the County of Los

1   Angeles for general negligence. (See Ex. "H," plaintiff's complaint; Ex. "C,"

2   plaintiff's deposition, p. 145, ln. 17 - p. 146, ln. 10.) Without mention of a second

3   vehicle, plaintiff alleged the following negligence theory against the County:

4   "Plaintiff was traveling southbound on Hacienda Blvd. in the number
    one lane in the city of Hacienda Heights County of Los Angeles.
5   Hacienda Blvd is designed as a straight away approaching Los Altos
    Blvd. and straight thereafter for approximately 150 to 250 yards after
6   which the roadway substantially curves to the right without any
    warning or caution to alert drivers to reduce speed. Moreover, there is
7   [sic] no protective barriers to prevent motor vehicles from coming in
    contact with the raised concrete curb and slam into the trees in the
8   median . . . . Plaintiff alleges that [City of Los Angeles] had a duty of
    care to maintain and design and correct the dangerous condition."
9   (See Ex. "H," p. 4.)

10          Thus, while the roadway turned to the right, he acknowledges he was

11  driving too fast and drove straight into a tree located in the center median.

12  Nevertheless, on March 23, 2012, plaintiff negotiated a $10,000.00 settlement in

13  exchange for a dismissal and release of his claims against the County. (See Ex. "I,"

14  settlement agreement, p. 1, ¶¶ 1-2.)

15          Concurrent with settling that lawsuit in March 2012, plaintiff filed the

16  instant product liability action against Ford --nearly two years after the crash and

17  long after the vehicle was destroyed. He alleges: "The magnitude and direction of

18  the crash forces from the collision were insufficient to cause significant cab

19  intrusion in a properly designed and constructed vehicle. However, in the subject

20  vehicle, the A-Pillar and front end collapsed, resulting in unacceptable intrusion

21  into the driver's compartment, and causing severe injuries to plaintiff . . . ." (See

22  Ex. "A," plaintiff's Complaint for Damages, ¶ 9.) Thus, plaintiff is now attempting

23  to hold Ford responsible (based on theories of product liability and negligence) for

24  his lower left leg injuries sustained in the collision he caused. He claims the

25  driver's footwell area was not crashworthy.

26          However, because he lacks evidence, plaintiff has not and cannot make

27  out a prima facia case. In response to Special Interrogatories Nos. 13-16 and

28  Request for Production Nos. 29 and 30, plaintiff has not and cannot identify any

CBM-LA\LA108301                                    -2-

1   tangible evidence, documents, or third-party witnesses to prove his alleged injuries
2   were caused by a product defect.  (See Ex. "J"-"K," Resp. to Special
3   Interrogatories, Nos. 13-16 and Resp. to Request for Production, Nos. 29-30.)
4   Plaintiff was requested to produce the subject vehicle, but he is unable to do so as
5   he did not preserve, or take any steps to preserve, it as evidence in his intended
6   lawsuit.  (See Ex. "L," Resp. to Request for Production, No. 1.)  His devoid
7   discovery responses demonstrate he has no physical evidence or documents to
8   substantiate his claims.  (Id.)

9          In sum, there is no triable issue of material fact as there is no evidence
10  that a vehicle defect exists or caused plaintiff's injuries.  Also, plaintiff's abject
11  failure to preserve the subject vehicle has so severely prejudiced Ford as to deprive
12  it of a reasonable opportunity to defend itself.

13  **II.    UNDISPUTED FACTS**

14          1)    Plaintiff cannot establish a defect or malfunction existed in the
15  subject vehicle.  (Undisputed Fact ("UDF") No. 1.)

16          2)    Plaintiff cannot establish that his alleged injuries were caused by a
17  vehicle defect or malfunction.  (UDF No. 2.)

18          3)    Plaintiff did not preserve the subject vehicle.  (UDF No. 3.)

19  **III.  PLAINTIFF HAS NO EVIDENCE OF A VEHICLE DEFECT**

20          **A.    Devoid Discovery Responses**

21          Plaintiff cannot identify any physical evidence, documents, or a third-
22  party witness to substantiate his contention the subject vehicle was defective or
23  caused his injuries.  The following discovery requests, and plaintiff's responses,
24  demonstrate that summary judgment is appropriate:

25                   **Request for Production No. 1:**

26          The subject 1999 Ford Expedition.

27

28

1

### Response to Request for Production No. 1:

2
3

Not in Plaintiff's possession and Plaintiff does not know who has possession nor knowledge thereof. Hadley Tow was the last known possessor, but apparently kept no records or chain of custody of information.

4

See UDF Nos. 1, 2 & 3; Ex. "K."

5

### Request for Production No. 2:

6
7

Any parts removed from the subject 1999 Ford Expedition since the subject incident.

8

### Response to Request for Production No. 2:

9
10

Not in Plaintiff's possession and Plaintiff does not know who has possession nor knowledge thereof. Hadley Tow was the last known possessor, but apparently kept no records or chain of custody of information.

11

See UDF Nos. 1, 2 & 3; Ex. "K."

12

### Interrogatory No. 13:

13
14

Please fully identify all evidence that supports your negligence claim.

15

See UDF Nos. 1 & 2; Ex. "J."

16

### Interrogatory No. 14:

17

If you contend a defect in the subject 1999 Ford Expedition caused your injuries, please fully describe the defect.

18

See UDF Nos. 1 & 2; Ex. "J."

19

### Interrogatory No. 15:

20
21

If you contend a defect in the subject 1999 Ford Expedition caused your injuries, please fully identify all documents and writings which support your claim of defect.

22

See UDF Nos. 1 & 2; Ex. "J."

23

### Interrogatory No. 16:

24
25

If you contend a defect in the subject 1999 Ford Expedition caused your injuries, please fully identify (including name, address and telephone number) all witnesses who can support your contention.

26

See UDF Nos. 1 & 2; Ex. "J."

27

///

28

///

**Responses To Interrogatories Nos. 13-16:**

Objection.  The information requested in this interrogatory is protected by the attorney work product doctrine and consulting expert privilege in that it encompasses information and/or materials compiled by Plaintiff's attorneys and consultants in anticipation of litigation.  In addition, this request seeks, in part, information that will be the subject of exert testimony.  Accordingly, it is improper under the consulting expert privilege.  Expert opinions will be disclosed pursuant to the Federal Rules of Civil Procedure and in accordance with any applicable scheduling order.

See UDF Nos. 1 & 2; Ex. "J."

**Request For Production No. 29:**

Any and all writings and documents which you contend establish or prove your claim that the subject 1999 Ford Expedition was defective and caused your injuries.

See UDF Nos. 1 & 2; Ex. "K."

**Request For Production No. 30:**

Any and all writings and documents which you contend establish or prove your claim that Ford negligently caused you injury or harm.

See UDF Nos. 1 & 2; Ex. "K."

**Response To Request For Production Nos. 29 & 30:**

Objection.  The information requested in this interrogatory [sic] is protected by the attorney work product doctrine and consulting expert privilege in that it encompasses information and/or materials compiled by Plaintiff's attorneys and consultants in anticipation of litigation.  In addition, this request seeks, in part, information that will be the subject of exert testimony.  Accordingly, it is improper under the consulting expert privilege.  Expert opinions will be disclosed pursuant to the Federal Rules of Civil Procedure and in accordance with any applicable scheduling order.

See UDF Nos. 1 & 2; Ex. "K."

Plaintiff has not, and cannot, produce the subject vehicle.  Plaintiff has not, and cannot, identify any witnesses who can support his defect allegations.  Plaintiff has not, and cannot, produce (let alone identify) any documents in support of his defect allegations.  (See UDF Nos. 1, 2 & 3.)

///

///

CBM-LA\LA108301

-5-

1    Because plaintiff has no such evidence, Ford is entitled to

2  summary judgment as a matter of law.  F.R.C.P. Rule 56(a); Celotex Corp. v.

3  Catrett, (1986) 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265.

4       **B.    The Vehicle Was Never Inspected And No Longer Exists**

5    Long before he ever sued Ford, the subject vehicle disappeared.  Plaintiff

6  did nothing to preserve, or even attempt to preserve, the subject vehicle.  (See

7  Ex. "C," plaintiff's deposition, p. 105, ln. 5 - p. 106, ln. 11; Ex. "L," Guzman's

8  deposition, p. 118, ln. 25 - p. 119, ln. 25, p. 130, lns. 10-17.)

9    Here, plaintiff drove the subject 1999 Ford Expedition as if it was his

10  own for several months pre-incident.  (See Ex. "C," plaintiff's deposition, p. 100,

11  lns. 1-3; Ex. "L," Guzman deposition, p. 93, ln. 21 - p. 94, ln. 3.)  At the time of the

12  collision, he was borrowing it indefinitely from his friend and business partner,

13  Guzman.  (Id.)  Accordingly, Guzman owned the vehicle and plaintiff had custody

14  and control of it.  However, following the collision, neither of them did anything to

15  preserve it as evidence.  Guzman testified plaintiff never asked him to secure or

16  preserve the vehicle:

17         Q:  [Did plaintiff] ever ask you to preserve the vehicle?

18         A:  No, he never did.

19         Q:  Did he never ask you to store the vehicle for him?

20         A:  No, he did not.

21         Q:  Did he ever ask you to sell the vehicle to him?

22         A:  No he did not . . . .

23         (Guzman deposition, p. 119, lns. 3-10, Ex. "L.")

24    Rather, shortly after the collision, Guzman transferred the vehicle title to

25  Hadley Tow (the tow company that removed the vehicle from the collision scene)

26  and paid Hadley Tow to dispose of the vehicle.  (See Ex. "C," plaintiff's deposition,

27  p. 201, ln. 20 - p. 202, ln. 4; Ex. "L," Guzman's deposition, p. 117, ln. 11 - p. 118,

28  ln. 15; Hassan Decl., ¶ 21.)  Thereafter, Hadley Tow sold the vehicle to a third

CBM-LA\LA108301                    -6-

1   party for scrap metal in and around May 2010.  (Hassan Decl., ¶ 24.)  Today, no

2   one knows the whereabouts of the subject vehicle because it was undoubtedly

3   scrapped.  (See Ex. "C," plaintiff's deposition, p. 105, lns. 21-23; Ex. "K," Resp. to

4   Requests for Production, No. 1; Ex. "L," Guzman's deposition, p. 130, lns. 19-22;

5   Hassan Decl., ¶¶ 25-27.)

6           Simply put, especially in a crashworthiness case, plaintiff cannot prove a

7   product defect without the underlying product.  Here, he claims the structures

8   surrounding the driver's lower legs crushed excessively, yet no one ever inspected

9   (let alone measured) any crush damage to the subject vehicle.  (Exhibit "F," pp. 36-

10  63, deposition testimony of CHP Officer Michael Rose; Exhibit "M," pp. 16-45,

11  deposition testimony of CHP Officer Russel Schnabel; Exhibit "N," pp. 12-34,

12  deposition testimony of CHP Officer Randall Barge.)

13          So far as Ford is aware, no automotive forensic engineer nor any other

14  expert ever examined or photographed the vehicle in its post-collision condition.

15  The only vehicle photographs available are those taken at the scene by the CHP;

16  however, none of the photographs provides any evidence of "defect."  (Ex. "O,"

17  CHP photographs.)

18      **C.**   **Plaintiff Has No Evidence A Vehicle Malfunction Or Defect**

19          **Exists Or Caused His Injuries**

20          Ford becomes entitled to summary judgment by showing that one or

21  more elements of plaintiff's case can not be established.  F.R.C.P. Rule 56(c).  "The

22  purpose of summary judgment is to avoid unnecessary trials when there is no

23  dispute as to the facts before the court."  Northwest Motorcycle Ass'n v. USDA

24  (9th Cir. 1994) 18 F. 3d 1468, 1472.  If the plaintiff lacks evidence to establish even

25  one element of the case at trial, then the case has no merit, and summary judgment

26  is proper.  As the court stated in Zweig v. Hearst Corporation (9th Cir. 1975) 521 F.

27  2d 1129, *cert. denied,* 423 U.S. 1025 (1975):

28

1
2
3

"Summary judgment has, as one of its most important goals, the elimination of waste of the time and resources of both litigants and the courts in cases where a trial would be a useless formality . . . . [W]hen there is no genuine issue as to any material fact . . . the movant is entitled to judgment as a matter of law." Id. at 1135-1136.

4   The moving party is not required to negate the non-movant's claim.  It is

5   enough to show the absence of evidence on an essential element of the non-

6   movant's case.  F.R.C.P. Rule 56(a)-(c); Celotex Corp. v. Catrett (1986) 477 US

7   317, 106 S.Ct. 2548, 91 L.Ed.2d 265 [holding absence of evidence shifts burden to

8   the non-movant to produce admissible controverting evidence].  Here, Ford is

9   entitled to judgment as a matter of law because there is an absence of evidence that

10  the subject vehicle was defective or caused plaintiff's injuries.  UDF Nos. 1-3.

11  When plaintiff was asked to state specific facts supporting his defect theory against

12  Ford, he provided only generic objections and boilerplate language void of any

13  substance.  See, O.S.C. Corp v. Apple Computer, Inc. (9th Cir. 1986) 792 F. 2d

14  1464, 1467 (holding evidence must be concrete and plaintiffs cannot rely on "mere

15  speculation, conjecture or fantasy.")  Villiarmo v. Aloha Island Air, Inc. (9th Cir.

16  2002) 281 F.3d 1054, 1061 ("[U]ncorroborated and self-serving testimony,"

17  without more, will not create a "genuine issue" of material fact precluding summary

18  judgment.)  Plaintiff here cannot identify any physical evidence, documents or

19  third-party witnesses to substantiate his allegations.

20  Based on the available evidence, all that can be demonstrated is that

21  plaintiff's vehicle collided with a fixed object on April 15, 2010, and plaintiff was

22  injured.  However, a product is not defective simply because an accident or injury

23  has occurred.  Barker v. Lull Engineering Co., Inc. (1978) 20 Cal.3d 413, 432, 143

24  Cal.Rptr. 225.

25  Because factually devoid interrogatory responses constitute an admission

26  of the absence of supporting evidence, Ford is entitled to summary judgment as a

27  matter of law.

28

CBM-LA\LA108301                              -8-

1     **D.   Plaintiff Cannot Meet His Evidentiary Burden**

2           Once the moving defendant demonstrates an absence of evidence for an

3   essential element of the plaintiff's action, the burden shifts to the plaintiff to show

4   the existence of a triable issue of material fact on the challenged elements.  F.R.C.P.

5   Rule 56; Matsushita Elec. Industrial Co. v. Zenith Radio Corp. (1986) 475 U.S.

6   574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538.  To do so, plaintiff must "go beyond the

7   pleadings and identify facts which show a genuine issue for trial and identify facts

8   which show a genuine issue for trial."  Fairbank v. Wunderman Cato Johnson (9th

9   Cir. 2000) 212 F. 3d 528, 531 (citing Anderson v. Liberty Lobby, Inc. (1986) 477

10   U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202); F.R.C.P. Rule 56(e).  To defeat a

11   motion for summary judgment, plaintiff must "make a showing sufficient to

12   establish the existence of an element essential to that party's case, and on which

13   that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

14          Defect and causation are common elements of proof under theories of

15   negligence and strict liability.  See e.g., Jiminez v. Sears Roebuck & Co. (1971) 4

16   Cal.3d 379, 93 Cal.Rptr. 769.

17          Plaintiff has not and cannot put forth evidence to establish his injuries

18   were caused by a defect in the subject vehicle.  UDF Nos. 1-2.  The vehicle no

19   longer exists.  UDF No. 3.  No one ever inspected it.  Only the CHP photographed

20   it post-collision, but none of the investigating officers looked for nor did they

21   photograph or document the extent of crush damage to any part of the vehicle.

22   Indeed, the investigating CHP officer did <u>not</u> even examine, photograph or measure

23   damage to the structure around the driver's feet:

24          "Q:  Can you tell me specifics about the deformation, if
25          any, of the driver's footwell?

26          A:   No.

27          Q:   Can you describe the deformation, if any, of the
            driver's footwell?

28          A:   No.

1                                   *   *   *

2        Q:   Did you measure the deformation, if any, of the
         driver's footwell?

3

4        A:   No.

5        Q:   Did you take any notes about the deformation, if any,
         of the driver's footwell?

6        A:   No.
                                      *   *   *

7

8        Q:   Can you tell me if the footwell crushed, if at all,
         rearward toward the driver's seat?

9        A:   No.

10       Q:   Did you take pictures of rearward footwell crush, if
         any, on the driver's side of the vehicle?

11

12       A:   No.

13       Q:   Can you tell me if the footwell crush, if at all, laterally
         towards the center console?

14       A:   No.

15       Q:   Did you measure lateral footwell crush, if any, on the
         driver's side of the vehicle?

16

17       A:   No.
                                      *   *   *

18       Q:   Did you take any pictures of lateral footwell crush, if
         any, on the driver's side of the vehicle?

19

20       A:   No.

21       Q:   Can you tell me if the footwell crushed, if at all,
         upward toward the driver's seat?

22       A:   No.
                                      *   *   *

23

24       Q:   Did you take pictures of upward footwell crush, if any,
         on the driver's side of the vehicle?

25       A:   No.

26       Q:   Can you tell me if the footwell crushed, if at all,
         downward toward the road?

27

28       A:   No."

1  (Exhibit "F," pp. 51-61, deposition testimony of CHP Officer Michael

2  Rose; see also, Exhibit "M," pp. 33-41, deposition testimony of CHP Officer Russel

3  Schnabel; Exhibit "N," pp. 26-31, deposition testimony of CHP Officer Randall

4  Barge.)

5  The CHP photographs <u>do not</u> depict the deformation, if any, to the

6  driver's footwell area. (Exhibit "O.") The entire area is obscured by the wrinkled

7  driver's floor mat. The investigating CHP officers did not look underneath the

8  floor mat:

9  Q:   Okay. Can you describe the deformation, if any, behind the floor mat of the driver's footwell?

10  A:   No.          *   *   *

11

12  Q:   Do you know what caused the carpet to wrinkle?

   A:   No.

13

14  (See Exhibit "F," pp. 59-61, deposition testimony of CHP Officer

15  Michael Rose; see also, Exhibit "M," pp. 40-41, deposition testimony of CHP

16  Officer Russel Schnabel; Exhibit "N," p. 29, deposition testimony of CHP Officer

17  Randall Barge.)

18  There are no adequate photographs (let alone any crush measurements)

19  involving those portions of the vehicle which plaintiff claims is defective. Even if

20  plaintiff could find an expert who was willing to opine the presence of a defect

21  based on the CHP photographs, such speculative testimony would be properly

22  excluded as lacking reliability. There is simply no substitute for needed visual and

23  tactile examinations of the evidence by qualified experts. Complete reliance on

24  another's photographs is an insufficient basis to reach a conclusion of defect. See

25  Stephen v. Ford Motor Company (2005) 134 Cal.App.4th 1363, 1372, 37

26  Cal.Rptr.3d 9, 16.

27  Triton Energy Corp. v. Square D Co. (9th Cir. 1995) 68 F.3d 1216 is on

28  point. In that case, a fire in an airplane hangar damaged several aircraft. The

1   plaintiff attempted to make out a case for product liability against the manufacturer

2   of a circuit breaker in the building.  A fire investigator took some early photographs

3   of the circuit breakers.  However, clean-up and demolition resulted in destruction of

4   the "most critical piece of evidence -- the allegedly defective Square D circuit

5   breaker."  Id. at 1219.  The Court found:

6   > "[Plaintiff's] entire case rests precariously on the opinion of its
   > expert . . . who never examined the allegedly defective circuit
7   > breaker.  This substantially impaired his ability to express a
   > reliable expert opinion based upon specific facts.  Therefore, we
8   > find that [the] expert opinion and the inferences [plaintiff] seeks
   > to draw from it are not of sufficient quantum or quality to create
9   > genuine issues of material fact.  [Citation omitted.]"  Id. at 1222.

10   The Court recognized the obvious, but insurmountable, proof problem

11   raised by the absence of the underlying product:

12   > "[Plaintiff] has simply failed to present sufficient probative
   > evidence that would require a jury decision . . . .  The
13   > circumstances would impose upon the jury the unenviable task
   > of listening to two expert's opinions unsupported by any
14   > physical evidence to bolster either opinion.  [Plaintiff] has failed
   > to establish the existence of an element essential to its case on
15   > which it will bear the burden of proof at trial."  Id. at 1222.

16   Accordingly, the District Court's judgment in favor of the defendant was

17   affirmed.  Triton Energy, 68 F.3d at 1222.  See also, Brown v. Parker-Hannifin Corp.

18   (5th Cir. 1990) 919 F.2d 308 [directed verdict for defense proper where plaintiff's

19   expert had never examined failed product and thus could not rule out other possible

20   causes of failure].

21   Plaintiff must prove that the product was defective, and that the defect

22   was a legal cause of his injuries.  See Barker v. Lull Engineering Co. (1978) 20

23   Cal.3d 413, 432, 143 Cal.Rptr. 225.  "[S]trict liability has never been, and is not

24   now, *absolute* liability.  As has been repeatedly expressed, under strict liability the

25   manufacturer does not thereby become the insurer of the safety of the product's

26   user.  [citations omitted]."  Daly v. General Motors Corp. (1978) 20 Cal.3d 725,

27   733, 144 Cal.Rptr. 380, 384 (emphasis in original).

28

1    The occurrence of an injury involving the product does not establish the

2  basis of a defect claim.  "[A] manufacturer is not required to produce an accident-

3  free or foolproof machine."  Thomas v. General Motors Corp. (1970) 13

4  Cal.App.3d 81, 88, 91 Cal.Rptr. 301, 305; See also Henderson v. Harnischfeger

5  Corp. (1974) 12 Cal.3d 663, 674, 117 Cal.Rptr. 1, 8.  "This would have the effect of

6  making respondents insurers unless they could produce satisfactory evidence that

7  there was no defect . . . ."  Tresham v. Ford Motor Co. (1969) 275 Cal.App.2d 403,

8  407, 79 Cal.Rptr. 883, 885.  In other words, the mere fact plaintiff was injured, in a

9  collision he caused, does not establish the existence of a product defect attributable

10  to Ford.  "[T]o establish liability, it is not enough that the action happened, nor may

11  liability inferences favorable to plaintiff be drawn from that fact . . . .  The defect

12  must be affirmatively established, and an inference of defect as a result of the

13  accident is not to be drawn from that fact."  Barrett v. Atlas Powder Co. (1978) 86

14  Cal.App.3d 560, 564-65, 150 Cal.Rptr. 339, 342.

15    Plaintiff has not identified any evidence to suggest that the vehicle was

16  improperly designed or manufactured or that there was any negligence by Ford.

17  Because plaintiff cannot establish that a vehicle defect was the proximate cause of

18  his alleged injuries, summary judgment is appropriate.

19    **E.    Ford Has Been Denied Access to Key Evidence**

20    Separate and apart from being denied the opportunity to defend itself

21  from plaintiff's crashworthiness claim, Ford has also been denied access to

22  evidence critical to its defense.  Certainly, plaintiff is negligent for driving head-on

23  into a tree.  But, was plaintiff also contributorily negligent for failure to utilize his

24  seat belt?  According to the Traffic Collision Report, plaintiff was not wearing his

25  seat belt.  Of course, plaintiff testified he was wearing it.  With the destruction of

26  the vehicle, so went any opportunity for Ford to analyze the seat belt (and related

27  hardware) for physical evidence of use/non-use.

28

CBM-LA\LA108301

-13-

1    The investigating CHP officers did <u>not</u> inspect the seat belt hardware for

2    evidence of use:

3    Q:   Did you examine the driver's seat belt?

4    A:   No, I did not.

5    Q:   Can you tell me if the driver's seat belt was fully
     retracted at the scene?

6
     A:   No, I can't.
7
                              *    *    *
8
     Q:   Did you examine the buckle to the driver's seat belt?
9
     A:   I don't recall.
10
     Q:   Did you examine the latch plate to the driver's seat belt?
11
     A:   I don't recall.
12
     Q:   Can you tell me if there was evidence that the plaintiff
13   wore his seat belt during the impact?

14   MR. SULLIVAN:  Object to the form of the question.

15   THE WITNESS:  No.

16                            *    *    *

17   Q:   Can you tell me if there was any stretch marks on the
     webbing of the driver's seat belt?
18   A:   No.

19                            *    *    *

20   Q:   Did you look for waves in the webbing of the driver's
     seat belt?
21
     A:   No.
22

23   (See Exhibit "F," pp. 47-51, deposition testimony of CHP Officer Michael Rose;

24   See also, Exhibit "M," pp. 29-33, deposition testimony of CHP Officer Russel

25   Schnabel; Exhibit "N," pp. 22-26, deposition testimony of CHP Officer Randall

26   Barge.)

27

28

CBM-LA\LA108301                       -14-

1    Plaintiff's failure to preserve the subject vehicle as evidence in his

2  lawsuit has so severely prejudiced Ford that a fair trial, based on facts, is not

3  possible.

4  **IV.  IN THE ALTERNATIVE, THE SANCTION OF DISMISSAL IS**

5  **APPROPRIATE FOR SPOLIATION OF EVIDENCE**

6    Based on the foregoing, summary judgment is proper.  However, in the

7  alternative, the sanction of dismissal for spoliation of evidence is appropriate where

8  failure to preserve the product at issue causes extraordinary prejudice to the

9  defendant.  Such is the case herein.

10    Spoliation of evidence concerns the destruction of relevant evidence

11  while on notice of a claim or potential claim.  Courts are invested with the inherent

12  power to sanction a party for spoliation of evidence.  Unigard Security Ins. Co. v.

13  Lakewood Engineering & Mfg. Corp. (9th Cir. 1992) 982 F.2d. 363, 368-369.

14    In Unigard, a yacht insurer claimed a fire was caused by a portable

15  electric space heater manufactured by the defendant.  However, the insurer failed to

16  preserve as evidence the allegedly defective space heater or the damaged vessel in

17  question.  After the Court excluded the expert testimony of plaintiff's experts (who

18  did have the early opportunity to examine the evidence), the District Court granted

19  summary judgment.  The 9th Circuit affirmed:  plaintiff's evidence was properly

20  excluded as an exercise of the District Court's inherent powers.  Unigard 982 F.2d

21  at 368.  The District Court's inherent powers include the "broad discretion to make

22  discovery and evidentiary rulings conducive to the conduct of a fair and orderly

23  trial.  Within this discretion lies the power . . . to exclude testimony whose use at

24  trial . . . would unfairly prejudice an opposing party [citations omitted]."  Id.

25  While Unigard urged a lesser sanction was appropriate, the District Court's

26  exclusionary order was upheld because the destruction:

27    "[P]recluded [the defendant] from any opportunity to inspect
     the evidence; and it rendered unreliable virtually of the
28    evidence that a finder of fact could potentially consider.

> Given these factors, it was within the district court's
> discretion to determine that a rebuttable presumption against
> [plaintiff] would have been insufficient to cure the prejudice
> arising in the context of this case. [citations omitted]."
> Unigard, 982 F.2d at 369.

Once the testimony of plaintiff's experts was excluded (as the appropriate sanction for spoliation of evidence), "Unigard lacked the ability to put forward a prima facie case or offer any admissible evidence creating a disputed material fact. Summary judgment was entirely appropriate as a matter of law." Unigard, 982 F.2d at 369.

When imposing the sanction of dismissal, the court will weigh various factors, including: the public's interest in expeditious resolution of litigation; the court's need to manage its docket; the risk of prejudice to the party seeking sanctions; the public policy favoring disposition of cases on their merits; and, the availability of less dramatic sanctions. Leon v. IDX Systems Corp. (9th Cir. 2006) 464 F.3d 951, 958.

In Leon, the District Court dismissed the plaintiff's employment claims (with prejudice) after determining he despoiled evidence by deleting thousands of files from his company-issued laptop computer during the pendency of the litigation. Id. The Court considered the extraordinary prejudice to the defendant:

> "The prejudice inquiry 'looks to whether the [spoiling party's]
> actions impaired [the non-spoiling party's] ability to go to trial
> or threaten to interfere with the rightful decision of the case.'
> [Citation omitted.]" Leon, 464 F.3d at 959.

In Leon, the District Court found the deletion of personnel files concerned obvious relevant materials would "likely to be at the heart" of the employer's defense if the files were still available. Leon, 464 F.3d 960. The Court concluded less drastic sanctions would not be useful, but rather futile. For instance, the Court considered but rejected fashioning a jury instruction that created a presumption in favor of the defense because it would leave the defense "equally helpless to rebut any material that Plaintiff might use to overcome to presumption." Id. While noting one factor (the public policy favoring disposition of a case on its

1  merits) weighed against dismissal, this was insufficient to outweigh the other

2  relevant factors, including:  the obvious prejudice to the defendant, the

3  unavailability of lesser sanctions, the Court's need to manage its docket as well as

4  the public's interest in expeditious resolution of litigation.  Id.

5          Also instructive is the case of Silvestri v. General Motors Corp. (4th Cir.

6  2001) 271 F.3d 583.  Silvestri crashed a Chevrolet vehicle into a utility pole.  He

7  claimed the driver's airbag should have deployed in the collision, and an air bag

8  would have mitigated his injuries.  Because Silvestri failed, before the vehicle was

9  repaired, to give General Motors notice of his claim and an opportunity to inspect

10  the damaged vehicle, the District Court dismissed his action.  On appeal, the

11  Court's dismissal was affirmed as the appropriate sanction for spoliation of the

12  "sole piece of evidence in this case."  Id. at 585.

13          In Silvestri, two accident reconstructionists on plaintiff's behalf

14  inspected and photographed the damaged Chevrolet before it was repaired and well

15  before General Motors ("GM") was ever sued.  A few months later, the vehicle's

16  title-owner transferred title to his insurance company, and the insurer sold it to a

17  third party, which in turn repaired and re-sold the vehicle.  After being sued,

18  eventually GM was able to locate and inspect the repaired vehicle.  However, its

19  ability to defend itself against plaintiff's product defect claim was severely

20  compromised as the vehicle was repaired.  GM never had the opportunity to

21  measure the crush damage which the Court acknowledged was critical to a proper

22  accident reconstruction analysis.  Silvestri, 271 F.3d at 589.  However, Silvestri

23  claimed he was not responsible for the spoliation of evidence, and he had no duty to

24  preserve the vehicle because he was not its owner.  He claimed the sanction of

25  dismissal was excessive.  Id.

26          The Court of Appeals found federal law applies because the power to

27  sanction for spoliation of evidence derives from the Court's inherent powers.

28  Relying on Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115

1   L.Ed.2d 27 (1991), the District Court has discretion "to fashion an appropriate

2   sanction for conduct which abuses the judicial process." Silvestri, 271 F.3d at 590.

3   Silvestri could provide no evidence he attempted to buy the damaged vehicle or

4   request that it be maintained in its post-accident condition until General Motors

5   could inspect it. Id. at 591. While intentional destruction of evidence or bad faith

6   conduct will justify dismissal, "even when conduct is less culpable, dismissal may

7   be necessary if the prejudice to the defendant is extraordinary, denying it the ability

8   to adequately defend its case." Silvestri, 271 F.3d at 593. While "outright

9   dismissal of a lawsuit . . . is a particularly serious sanction, [it] is within the court's

10  discretion." Id.

11       Like General Motors in Silvestri, Ford has been denied the opportunity to

12  inspect the subject vehicle's crash damage. Accurate vehicle crush measurements

13  are vital to a detailed reconstruction of the collision including speed calculations.

14  Silvestri, 271 F.3d at 588. This is especially so here where plaintiff claims the

15  subject vehicle was not crashworthy under the particular circumstances of his

16  unique collision with an immoveable object. How much of the front structure

17  actually engaged the tree? Beneath the sheet metal, what portions of the front

18  structure were involved? How deep was the deformation? Was there damage to

19  the vehicle's frame? If so, to what extent? What was the maximum crush

20  intrusion? Was the footwell and toe pan area actually deformed? If so, by how

21  much and in what direction? Was plaintiff actually wearing his seat belt? All

22  critical questions that cannot be answered because the subject vehicle was not

23  preserved as evidence. Indeed, the vehicle's destruction has deprived Ford of

24  information essential to another critical defense: was plaintiff speeding when he

25  impacted the tree?

26       Without the vehicle, plaintiff here cannot present a prima facie case of

27  negligence, defect or causation; likewise, the absence of the vehicle itself so

28

CBM-LA\LA108301                     -18-

1  severely prejudices Ford's ability to defend itself that a fair trial is not possible.

2  Accordingly, the sanction of dismissal is appropriate.

3  **V.   CONCLUSION**

4         For all of the foregoing reasons, this Court should grant summary

5  judgment in favor of the Ford.  In the alternative, the Court should dismiss

6  plaintiff's action as the appropriate sanction for plaintiff's complete failure to even

7  attempt to preserve the subject vehicle.

8         Dated:  July 3, 2013

9                              CARROLL, BURDICK & McDONOUGH LLP

10

11                              By

12                                        Emma E. Graglia
                                   Attorneys for Defendant,
13                                 FORD MOTOR COMPANY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CBM-LA\LA108301                        -19-

# DECLARATION OF EMMA E. GRAGLIA

## DECLARATION OF EMMA E. GRAGLIA

I, Emma E. Graglia, declare as follows:

1.     I am an attorney at law duly licensed to practice before all the courts in the State of California and an associate with the law firm of Carroll, Burdick & McDonough LLP, attorneys of record for defendant Ford Motor Company ("Ford") in the above-entitled action.  The matters referred to in this Declaration are based upon my personal knowledge, and if called as a witness, I could and would competently testify thereto.

2.     On June 3, 2013, pursuant to L.R.7-3, I contacted Robert Sullivan, Esq. to thoroughly discuss the substance of the contemplated motion.  This meeting was not in person because Mr. Sullivan resides in Kansas City, Missouri.  The parties unfortunately did not resolve the issues addressed by the instant motion.

3.     Attached hereto as Exhibit "A" is a true and correct copy of plaintiff David Michery's complaint asserting strict liability and negligence against Ford.

4.     Attached hereto as Exhibit "B" is a true and correct copy of the California Highway Patrol ("CHP") Traffic Collision Report regarding the subject April 15, 2010 single vehicle motor vehicle collision.

5.     Attached hereto as Exhibit "C" are true and correct copies of relevant pages from the deposition transcript of plaintiff David Michery taken January 18, 2013.

6.     Attached hereto as Exhibit "D" are true and correct copies of relevant pages from the deposition transcript of April Armas taken April 29, 2013.

7.     Attached hereto as Exhibit "E" are true and correct copies of relevant pages from the deposition transcript of Anyssa Armas taken April 29, 2013.

8.     Attached hereto as Exhibit "F" are true and correct copies of relevant pages from the deposition transcript of CHP Officer Bryan Rose taken January 16, 2013.

CBM-LA\LA108301

9.   Attached hereto as Exhibit "G" is a true and correct copy of the "Claim For Damages To Person Or Property" form plaintiff filed with the County of Los Angeles on October 15, 2010.

10.   Attached hereto as Exhibit "H" is a true and correct copy of plaintiff's complaint asserting general negligence against the City of Los Angeles (Case No.: KC0612910) for damages arising out of the subject incident.

11.   Attached hereto as Exhibit "I" is a true and correct copy of the settlement agreement between plaintiff and the City of Los Angeles dated March 23, 2012.

12.   On November 1, 2012, Ford propounded Special Interrogatories on plaintiff.  Attached hereto as Exhibit "J" is a true and correct copy of plaintiff's response to Special Interrogatories Nos. 15 and 16 served on January 4, 2013.

13.   On November 1, 2012, Ford propounded Requests for Production on plaintiff.  Attached hereto as Exhibit "K" is a true and correct copy of plaintiff's response to Requests for Production Nos. 1, 2, 29 and 30 served on January 4, 2013.

14.   Attached hereto as Exhibit "L" are true and correct copies of relevant pages from the deposition transcript of Ramiro Guzman taken December 3, 2012.

15.   Attached hereto as Exhibit "M" are true and correct copies of relevant pages from the deposition transcript of CHP Officer Russel Schnabel taken January 16, 2013.

16.   Attached hereto as Exhibit "N" are true and correct copies of relevant pages from the deposition transcript of CHP Officer Randall Barge taken February 26, 2013.

17.   Attached hereto as Exhibit "O" are true and correct copies of all photographs taken by the CHP on April 15, 2010, concerning the scene and the subject 1999 Ford Explorer.

CBM-LA\LA108301

1    I declare under penalty of perjury under the laws of the State of

2    California that the foregoing is true and correct.

3    Executed on July 3, 2013, at Los Angeles, California.

4

5

6                                                    _____

7                                                    Emma E. Graglia

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     CBM-LA\LA108301

23