UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| David Michery,<br><br>                    Plaintiff,<br><br>    v.<br><br>Ford Motor Company, a Delaware corporation; Board Ford, a California entity, form unknown; and DOES to 100, inclusive,<br><br>                    Defendants. | CV 12-04957 RSWL (FFMx)<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, DISMISSAL FOR SPOLIATION OF EVIDENCE** [18] |

Currently before the Court is Defendant Ford Motor Company's ("Defendant") Motion for Summary Judgment, or in the Alternative, Dismissal for Spoliation of Evidence [18]. The Court, having reviewed all papers submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** The Court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment, or in

1

the Alternative, Dismissal for Spoliation of Evidence.

## I. BACKGROUND

On April 15, 2010, Plaintiff David Michery ("Plaintiff") was involved in a single-vehicle car accident while driving a 1999 Ford Expedition belonging to Mr. Ramiro Guzman ("Vehicle"). According to Officer Bryan Rose, the California Highway Patrol ("CHP") officer who wrote the Traffic Collision Report detailing Plaintiff's accident, Plaintiff was driving the Vehicle southbound on Hacienda Boulevard in Hacienda Heights, Los Angeles County, when Plaintiff made an "unsafe turning movement to the left toward a raised concrete curb," which served as the center median on Hacienda Boulevard. Graglia Decl., Ex. B ("CHP Report"), p. 9. See also Compl. ¶¶ 8, 9. The Vehicle struck the curb and continued to move southbound on the raised median until it collided with a tree planted in the middle of the median. Compl. ¶ 9; CHP Report, p. 9.

Following the accident, Plaintiff told Officer Rose that there had been another vehicle driving southbound on Hacienda Boulevard in the lane to Plaintiff's right that swerved into Plaintiff's lane toward the right side of the Vehicle. CHP Report, p. 8. See also Compl. ¶ 9. Plaintiff told Officer Rose that he swerved to the left in order to avoid the other vehicle. CHP Report, p. 8. However, when Officer Rose spoke to a witness at the scene of the accident, the

1  witness told him that she had seen Plaintiff "rock[]
2  back and forth twice and then swerve[] to the left"
3  before driving up the curb and that she did not see any
4  other vehicles around Plaintiff at the time of the
5  collision.  <u>Id.</u> at p. 9.  As a result of the Vehicle's
6  collision with the tree, Plaintiff claims that he
7  sustained injuries to his left leg, left hip, and
8  nervous system, which he believes will result in
9  permanent disability.  Compl. ¶¶ 11, 19.
10      On April 15, 2010, following Plaintiff's collision,
11 Hadley Tow towed the Vehicle to a storage facility
12 located in Whittier, California.  Hassan Decl. ¶ 12,
13 Ex. 2.  Eight days later, on April 23, 2010, the
14 Vehicle's owner paid Hadley Tow a disposal fee of $300
15 for disposal of the Vehicle.  <u>Id.</u> at ¶ 21, Ex. 4.  <u>See</u>
16 <u>also</u> Graglia Decl., Ex. C, 201:20-202:4.
17      Nearly two years after Plaintiff's accident,
18 Plaintiff filed this Action in California state court,
19 alleging that although "[t]he magnitude and direction
20 of the crash forces from the collision were
21 insufficient to cause significant cab intrusion in a
22 *properly designed and constructed* vehicle," the
23 Vehicle's "A-Pillar and front end collapsed, resulting
24 in unacceptable intrusion into the driver's
25 compartment, and causing severe injuries to Plaintiff
26 [1].  Compl. ¶ 9 (emphasis added).  Plaintiff asserts
27 that Defendants are liable for negligence and strict
28 product liability as a result of the Vehicle's

allegedly defective structural components. Defendant removed this Action to federal court on June 6, 2012, based on complete diversity of the Parties [1]. Although Plaintiff names both Ford Motor Company and Board Ford as defendants in this Action, Board Ford has not appeared or otherwise filed a responsive pleading in this case, and Defendant asserts that Board Ford, Inc. has actually been dissolved since February 14, 2011. See Dkt. #1, ¶ 7, Ex. G. On July 5, 2013, Defendant filed the present Motion for Summary Judgment, or in the Alternative, Dismissal for Spoliation of Evidence asking that the Court grant Defendant summary judgment as to Plaintiff's Complaint due to Plaintiff's lack of evidence or, in the alternative, sanction Plaintiff by dismissing the case due to his failure to preserve the Vehicle for purposes of this lawsuit [18].

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence, and any inferences based on underlying facts, must be viewed in

the light most favorable to the opposing party. Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1329 (9th Cir. 1983).

Where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary judgment by showing an "absence of evidence" to support the non-moving party's case. Celotex v. Catrett, 477 U.S. 317, 325 (1986).

The non-moving party, on the other hand, is required by Fed. R. Civ. P. 56(c) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324. Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993). A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." Anderson, 477 U.S. at 255. Where a motion for summary judgment is grounded on the assertion that the non-moving party has no evidence, the non-moving party may defeat the motion by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party." Celotex, 477 U.S. at 332.

In ruling on a motion for summary judgment, the Court's function is not to weigh the evidence, but only

to determine if a genuine issue of material fact exists.  Anderson, 477 U.S. at 255.

### III. ANALYSIS

**A.  Motion for Summary Judgment**

Based on the undisputed facts and the following analysis, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES as moot** Defendant's Request for Dismissal for Spoliation of Evidence

    1.  Strict Products Liability

A manufacturer can be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product.  In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices and Prods Liab. Litig., 754 F. Supp. 2d 1208, 1219-20 (C.D. Cal. 2010) (quoting Saller v. Crown Cork & Seal Co., Inc., 187 Cal. App. 4th 1220, 1231 (2010)).  California recognizes strict liability for three types of products liability claims: design defects, manufacturing defects, and warning defects.  Id.

A defect in manufacture or design must be affirmatively established, and an inference of defect solely from the fact of an accident cannot be drawn.  Hinckley v. La Mesa R.V. Center, Inc., 158 Cal. App. 3d 630, 642 (1984).  Nor does the fact that a product was found in a defective condition after the event where it appears equally likely that it was caused by the accident itself makes out a case that the product was

1  defective.  See id. at 642 (citing Prosser, Law of
2  Torts (4th ed. 1971)).

3               *a.   Manufacturing Defect Theory*
4       Under a "manufacturing defect" theory, a defective
5  product is one that differs from the manufacturer's
6  intended result or from other ostensibly identical
7  units of the same product line.  In re Toyota, 754 F.
8  Supp. 2d at 1222.  The "manufacturing defect" theory
9  posits that "a suitable design is in place, but that
10 the manufacturing process has in some way deviated from
11 that design."  Id.

12      Here, Plaintiff relies on his expert witness, Dr.
13 Khadilkar, to support his claim that the Vehicle
14 contained a manufacturing defect.  However, because the
15 Vehicle itself no longer exists, and no one had ever
16 inspected it after the accident, Dr. Khadilkar's expert
17 opinion is insufficient to create a triable issue of
18 material fact as to the Vehicle's alleged manufacturing
19 defect.  See Triton Energy Corp. v. Square D Co., 68
20 F.3d 1216, 1222 (9th Cir. 1995)

21      In Triton, a plaintiff asserted a products
22 liability claim against the manufacturer of a circuit
23 breaker that was suspected of causing a fire in an
24 airplane hanger.  Id. at 1218-19.  The plaintiff argued
25 that the circuit breaker contained both a manufacturing
26 and design defect.  Id. at 1219.  Although the fire
27 investigator in Triton took photographs of the circuit
28 breaker, both the hangar and the circuit breaker were

1  subsequently destroyed.  Id.  Therefore, the
2  plaintiff's entire case rested precariously on the
3  opinion of its expert, who had never examined the
4  allegedly defective product at issue.  Id. at 1221.
5  The Ninth Circuit affirmed summary judgment in favor of
6  the defendant where neither party's expert had access
7  to the allegedly defective circuit breaker and
8  therefore could not express a reliable opinion based on
9  specific facts.  The Ninth Circuit found that "[a] jury
10 should not be asked to evaluate the credibility of
11 experts concerning the defectiveness of a circuit
12 breaker and its container when it left the hands of
13 [the manufacturer], which the experts have neither seen
14 nor can see, and which was manufactured more than two
15 decades ago."  Id. at 1222.  Here, although a CHP
16 officer took photographs of the Vehicle just after the
17 accident, the Vehicle itself no longer exists.
18 Plaintiff's expert, Dr. Khadilkar, had never actually
19 examined the Vehicle.  Accordingly, based on Triton,
20 Dr. Khadilkar's expert opinion and the inferences that
21 Plaintiff wants to draw from said opinion are
22 insufficient to create genuine issues of material fact
23 as to a manufacturing defect claim.  See also Brown v.
24 Parker-Hannifin Corp., 919 F.2d 308 (5th Cir. 1990)
25 (holding that because an expert witness never actually
26 examined the allegedly defective product, the expert
27 witness's testimony amounted to speculation and was
28 properly excluded).

Further, Plaintiff fails to identify any physical evidence, documents, or third party witnesses to substantiate his claim that the Vehicle was defectively manufactured. In analyzing the photographic evidence, CHP report, witness statements, and medical records, Plaintiff raises no genuine issue of material fact that the Vehicle deviated from some intended design. None of the officers investigating Plaintiff's accident specifically looked for, photographed, or documented the extent of crush damage on any part of the Vehicle, including the structure around the driver's feet, which Plaintiff specifically targets in his Complaint. Graglia Decl., Ex. F, p. 51-61 (Officer Rose Depo.), Ex. M, p. 33-44 (Officer Schnabel Depo.), & Ex. N, p. 26-32 (Officer Barge Depo.)). The photographs, which were taken post-collision, also do not depict deformation asserted by Plaintiff, as the area is obscured by the wrinkled driver's floor mat. Sullivan Decl. Ex. 7. Witness statements by April and Anyssa Armas, who observed the accident, only describe the accident itself and are devoid of any facts supporting the existence of a manufacturing defect in the Vehicle. See Dkt. #18-1 (Exh. D & E). Additionally the medical records only state the extent of Plaintiff's injuries and describe the surgeries performed on Plaintiff. See Dkt. #22-3, #22-5. Those medical records never address the condition of the Vehicle before or after the accident, nor do they contain any facts to support the

existence of a manufacturing defect in the Vehicle. Even viewing such evidence in the light most favorable to Plaintiff, this evidence is insufficient to create genuine issues of material fact that the Vehicle contained a manufacturing defect.

Thus, Plaintiff has not submitted evidence sufficient for a rational juror to find that the Vehicle contained a manufacturing defect. Because there is no genuine issue of material fact that the Vehicle was defectively manufactured, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's Strict Liability Claim that the Vehicle was defectively manufactured.

b. *Design Defect Theory*

Under California law, a product may be found defectively designed in one of either two ways. Albee v. Continental, 780 F. Supp. 2d 1005, 1008 (E.D. Cal. 2011). First, under the consumer expectations test, a product may be defectively designed if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Id. Under this test, a plaintiff must describe how the product fails to meet the minimum safety expectations of an ordinary consumer of the product. Lucas v. City of Visalia, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010). Second, under the risk-utility test, a product may be found defectively designed if the plaintiff

demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design. Id. Whether a plaintiff may proceed under the consumer expectations test or the risk-benefit test is dependent upon the particular facts in each case. McCabe v. Am. Honda Motor Co., 100 Cal. App. 4th 1111, 1121 (2002).

The consumer expectations test is reserved for cases in which the everyday experience of the product's users permits a conclusion that the product's design violated minimum safety assumptions, and is thus defective regardless of expert opinion about the merits of the design. Soule v. General Motors Corp., 8 Cal. 4th 548, 567 (1994). For example, "the ordinary consumers of modern automobiles may and do expect that such vehicles will be designed so as not to explode while idling at stop-lights, experience sudden steering or brake failure as they leave the dealership, or roll over and catch fire in two-mile-per-hour collisions." McCabe, 100 Cal. App. 4th at 1121. In cases where a plaintiff's theory of defect seeks to examine the behavior of "obscure components under complex circumstances" outside the ordinary experience of the consumer, the consumer expectations test is inapplicable; and defect may only be proved using the risk-benefit analysis. Id. at 1122.

1    The Court finds that the risk-benefit test, rather
2 than the consumer expectations test, is the appropriate
3 test to apply in this case.  Plaintiff does not argue
4 that an obvious design defect such as a sudden
5 explosion, sudden steering, or break failure caused
6 Plaintiff's injuries.  Rather, Plaintiff's theory of
7 defect examines the obscure components of the structure
8 of the Vehicle itself; for example, Plaintiff argues
9 that the compromised structural integrity of the total
10 Vehicle and the occupant compartment resulted in
11 alleged excessive deformation and crush in the occupied
12 compartment.  Khadilkar Decl. ¶ 25.
13    However, even if the Court were to apply the
14 consumer expectations test to this case, the Court
15 finds that Plaintiff still fails to provide sufficient
16 evidence to create a genuine issue of material fact
17 that the Vehicle failed to meet the minimum safety
18 expectations of an ordinary consumer of the product.
19 See Albee, 780 F. Supp. 2d at 1005.  In support of his
20 argument that the Vehicle failed to meet the minimum
21 safety expectations of an ordinary consumer of the
22 product, Plaintiff again relies on expert testimony
23 from Dr. Khadilkar.  Dr. Khadilkar declares that the
24 damage sustained by the Vehicle was excessive given the
25 "relatively low Delta-V of the tree and Expedition
26 interaction" (Khadilkar Decl. ¶ 26), and that "[a]s a
27 result of the excessive driver compartment deformation
28 and crush[,] the driver seat was pushed downward,

12

forward, and sideways to the driver door, resulting in entrapment of Plaintiff's "left lower extremity." Khadilkar Decl. ¶ 27. Dr. Khadilkar also makes a conclusory statement that the Vehicle failed to perform as safely as an ordinary consumer would expect when used as intended in a reasonably foreseeable manner. See id. at ¶ 36. However, expert testimony as to what consumers ordinarily "expect" is generally improper. Soule, 8 Cal. 4th at 567 ("Expert testimony as to what laypersons may expect from a product improperly invades the province of jury."). Thus, the Court does not consider Dr. Khadilkar's expert testimony as to what consumers ordinarily expect.

Aside from Dr. Khadilkar's Declaration, Plaintiff does not explain how the other evidence provided in this case, i.e., the CHP accident report, photographs, witness depositions, or medical records support that the Vehicle failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Specifically, the post-collision photographs by themselves fail to show whether the damage was excessive given the speed at which Plaintiff was driving; those photographs only depict the damage to the left side of the Vehicle. Graglia Decl. Ex. N, p. 26-31 (Officer Barge Depo.). Thus the photographs in and of themselves cannot raise a genuine issue of material fact. Without an explanation as to how the damage indicated by the

photographs and other evidence differ or would differ from what a reasonable consumer would expect, there is no basis for a reasonable juror to conclude that the damage was outside the realm of consumer expectations. Further, the CHP Report does not support the allegation that the cause of the accident or Plaintiff's injuries was the Vehicle's failure to perform as safely as an ordinary consumer would expect; in fact, the CHP Report specifically states that the cause of the accident was Plaintiff's unsafe turning movement. CHP Report, p. 10. Moreover, the statements provided by witnesses April and Anyssa Armas only describe the accident itself and is devoid of any facts supporting that the Vehicle contained excessive crush or deformation, or that the Vehicle's crush or deformation caused Plaintiff's injuries. See Dkt. #18-1 (Ex. D & E). The medical records only describe Plaintiff's injuries and surgeries performed on Plaintiff and fail to provide any information about the performance of the Vehicle at the time of the crash or the condition of the Vehicle before or after the crash. See Dkt. #22-3, #22-5. Plaintiff appears to rely solely on Dr. Khadilkar's opinion. However, absent other evidence to support the allegation that the Vehicle failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, Plaintiff fails to show that any rational juror can find that the Vehicle contained design defect under the consumer

expectations test.

Turning to the risk-utility test, Plaintiff has not submitted evidence sufficient for a rational juror to find that the product's design proximately caused his injuries. See McCabe, 100 Cal. App. 4th at 1126. Again, Plaintiff relies on Dr. Khadilkar, who essentially opines that because there was excessive driver compartment deformation and crush (namely, floor crush, roof crush, and A-pillar, B-pillar, and seat crush), there was a defect in the Vehicle. Khadilkar Decl. ¶ 27. Dr. Khadilkar further states that the excessive driver compartment deformation and crush resulted in entrapment of Plaintiff's left lower extremity, and the resulting forces were the direct cause of his femoral and tibial fractures. Id. However, as discussed above, the Ninth Circuit in Triton prevents the Court from relying on the testimony of an expert witness who did not have access to the allegedly defective product. In Triton, the plaintiff made a claim for design defect, but the Ninth Circuit ultimately affirmed summary judgment in favor of the defendant where neither party's expert had access to an allegedly defective circuit breaker and therefore could not express a reliable opinion based on specific facts. Triton, 68 F.3d at 1222. Accordingly, here, Dr. Khadilkar's expert opinion and the inferences that Plaintiff wants to draw from said opinion are insufficient to create genuine issues of material fact

1 as to the design defect claim because Dr. Khadilkar
2 never examined the Vehicle and the Vehicle no longer
3 exists.
4    Further, it appears that Plaintiff is also trying
5 to raise a genuine issue of material fact that the
6 Vehicle's design proximately caused Plaintiff's
7 injuries by presenting the evidence in the form of the
8 CHP accident report, photographs, witness depositions,
9 or medical records.  However, as discussed above,
10 Plaintiff does not explain how any of these pieces of
11 evidence raise any genuine issue of material fact that
12 there was a design or manufacturing defect, and it is
13 not immediately apparent to this Court how they do.
14 Rather, Plaintiff appears to be offering said evidence
15 only as a foundation for Dr. Khadilkar's expert
16 opinion.  However, as indicated above, Dr. Khadilkar's
17 expert testimony is insufficient to create a genuine
18 issue of material fact because he never examined the
19 Vehicle.  Without explanation or clarification as to
20 how the CHP report, photographs, medical records, or
21 witness statements show that the Vehicle's design
22 proximately caused Plaintiff's injuries, these pieces
23 of evidence cannot raise any genuine issue of material
24 fact.  Accordingly, because Dr. Khadilkar's expert
25 opinion and the evidence in this case are insufficient
26 to create genuine issues of material fact as to a
27 design defect claim, the Court **GRANTS** Defendant's
28 Motion for Summary Judgment as to Plaintiff's Strict

Liability Claim that the Vehicle was defectively designed.

    c.   *Failure to Warn*

Liability under this theory "requires that the manufacturer knows, or should have known, of the danger of the product at the time it is sold or distributed," and that "the plaintiff prove that defendant 'did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution.'" In re Toyota, 754 F. Supp. 2d at 1221. In his Complaint, Plaintiff alleges that the Vehicle contained no adequate warnings about its defective and unreasonably dangerous condition. Compl. ¶ 16. However, the Court notes that Plaintiff puts forth no evidence to give rise to genuine issues of material fact as to Defendant's failure to warn of defective and dangerous conditions. Plaintiff only puts forth evidence as to design and manufacturing defects. Therefore, because Plaintiff has not provided evidence that Defendant failed to warn of defective and dangerous conditions, and the evidence in the record does not show that the Vehicle was defectively designed or manufactured, there is no genuine issue of material fact that the Vehicle contained no adequate warnings about defective and unreasonably dangerous conditions. Therefore, the Court **GRANTS** Defendant's Motion for

Summary Judgment as to Plaintiff's Strict Liability Claim for Failure to Warn.

### 2. Negligence Claim

When the negligence claim depends on the existence of a defect, failure to establish that there is a defect necessarily results in failure of the negligence claim. Albee, 780 F. Supp. 2d at 1012. In other words, if there are no genuine issues of material fact with respect to the defective nature of the vehicle, then a party can be entitled to summary judgment on the negligence claim. See id. Here, Plaintiff failed to establish that a defect existed at the time the Vehicle passed to the hands of Defendant, an element which is essential to both the strict liability and negligence claims. See Triton, 68 F.3d at 1218 n.1. Because Plaintiff fails to establish that a defect existed at the time the Vehicle passed to the hands of Defendant, Plaintiff's negligence claim also fails. See id. Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's negligence claim.

### B. Request for Dismissal for Spoliation of Evidence

Alternatively, Defendant argues that the absence of the Vehicle so severely prejudices Defendant's ability to defend itself that a fair trial is not possible. However, since the Court **GRANTS** Defendant's Motion for Summary Judgment, the Court **DENIES as moot** Defendant's Request for Dismissal for Spoliation of Evidence.

//


**C.   Defendant's Evidentiary Objections**

Lastly, the Court addresses Defendant's twenty one evidentiary objections. Defendant objects to numerous statements in Dr. Khadilkar's declaration on various grounds, including lack of foundation, lack of personal knowledge, and legal conclusion. However, because the Court **GRANTS** Defendant's Motion for Summary Judgment, the Court **OVERRULES as moot** Defendant's evidentiary objections.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment, or in the Alternative, Dismissal for Spoliation of Evidence. Specifically, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES as moot** Defendant's Request for Dismissal for Spoliation of Evidence. The Court also **OVERRULES as moot** Defendant's twenty one evidentiary objections. Moreover, because Plaintiff has not identified the Doe defendants despite having ample time to do so, the Doe defendants are dismissed from this Action.

//
//
//
//
//
//
//

1  See McKenzie v. Rossi-Hill, No. 07-CV-1752-AC, 2010 WL
2  2595560, at *1, n.2. (D. Or. Mar 29, 2010), report and
3  recommendation adopted, No. 07-CV-1752-AC, 2010 WL
4  2595537 (D. Or. June 23, 2010) aff'd, 459 Fed. Appx.
5  661 (9th Cir. 2011).

**IT IS SO ORDERED.**
DATED: November 12, 2013

                    RONALD S.W. LEW
                **HONORABLE RONALD S.W. LEW**
              Senior, U.S. District Court Judge