MATTHEW R. ROGERS (SBN 128215)
**SQUIRE PATTON BOGGS (US) LLP**
555 S. Flower Street, 31st Floor
Los Angeles, California 90071
Telephone:  213.624.2500
Facsimile:   213.623.4581
Email:         matthew.rogers@squirepb.com

Bradley W. Petersen (admitted pro hac vice)
SLATTERY PETERSEN PLLC
2828 N. Central Avenue, Suite 1111
Phoenix, Arizona 85004
Telephone: (602) 507-6100
Facsimile: (866) 323-9593
Email:         bpetersen@slatterypetersen.com

Attorneys for FORD MOTOR COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MICHERY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FORD MOTOR COMPANY, a Delaware corporation; BOARD FORD, a California entity, form unknown; and DOES 1 to 100, inclusive,<br><br>　　　　Defendants. | Case No. CV 12-04957-RSWL-FFMx<br><br>District Judge: Ronald S. W. Lew<br>Magistrate Judge:  Frederick F. Mumm<br><br>**FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 11 RE CRASH TIMING**<br><br>Date:    October 3, 2017<br>Time:    10:00 a.m.<br>Dept.:    Courtroom 1 |

Ford Motor Company ("Ford") responds in opposition to Plaintiff's Motion in Limine No. 11, which seeks to preclude Ford's experts regarding crash timing. It is strange that Plaintiff would file this motion. Plaintiff has two liability experts: Paul Lewis regarding biomechanics and Stephen Syson regarding vehicle design. According to Plaintiff's two experts, the accident reconstruction is irrelevant. Neither of Plaintiff's experts are accident reconstruction experts, and neither performed or relied on an accident reconstruction in forming their opinions. So, if (according to Plaintiff) the accident reconstruction so irrelevant, why is Plaintiff wasting judicial

resources seeking to exclude one small element of Ford's accident reconstruction as to the crash pulse given the purpose of motions in limine?

By contrast, Ford took a different approach, and Ford's experts formed their opinions based on a reliably-sound accident reconstruction. Ford has three liability experts: Todd Hoover regarding accident reconstruction; James Funk, Ph.D., regarding biomechanics; and Ram Krishnaswami regarding vehicle design and performance. As part of his analysis, Hoover evaluated and reached opinions regarding the crash pulse and exhibits documenting his opinions and the bases for his opinions were produced at Hoover's deposition. Plaintiff took Ram Krishnaswami's deposition before Hoover's deposition. Yet, Krishnaswami testified consistent with Hoover regarding the crash pulse based on Krishnaswami's evaluation of the crash and crash vehicle and his decades of work as an automotive engineer after having run 1000s of crash tests. While Krishnaswami may not have known all the work that Hoover did in reaching his opinion, that alone is no basis for excluding testimony. For these reasons, discussed more fully below, the Court should deny Plaintiff's Motion in Limine No. 11.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I. Plaintiff should not be wasting judicial resources on accident reconstruction issues, which Plaintiff's experts believe are irrelevant.**

It is hard to imagine why Plaintiff would file this motion regarding accident reconstruction, when Plaintiff's experts believe the accident reconstruction is irrelevant and they formed their opinions without any accident reconstruction. In his report and deposition, Plaintiff expert Syson admitted that he was not asked to reconstruct the accident and he did not otherwise perform an accident reconstruction. *See* Syson Rpt. at 8 (Doc. 63-1); Syson Dep. at 8:16-20; 102:4-25; 193:9-18 (Doc. 63-2). From Syson's perspective, the accident reconstruction is only relevant to establish crash severity and determine whether a crash was survivable, which he somehow determined it was without doing any accident reconstruction. *See* Syson Rpt. at 8

1  (Doc. 63-1). Similarly, Plaintiff expert Lewis admitted that he is not an accident
2  reconstruction expert, he is not aware of any Plaintiff expert accident reconstruction,
3  and he is not relying on an accident reconstruction in forming his opinions. *See* Lewis
4  Dep. at 4:22-6:5 (Doc. 63-4). Plaintiff should not be wasting judicial resources filing
5  a motion in limine regarding the small issue of crash timing within the larger
6  evaluation of accident reconstruction when Plaintiff and his experts chose not to
7  perform any accident reconstruction. The Court should deny Plaintiff's motion.

8  **II.   Ford's accident reconstruction expert formed opinions regarding the**
9  **       Michery crash timing that are reliably sound and well-supported.**

10       By contrast, Ford expert Todd Hoover performed a detailed accident
11 reconstruction. *See* Hoover Rpt. (Doc. 63-5). As set forth in Hoover's expert report,
12 Plaintiff David Michery was driving a 1999 Ford Expedition on Hacienda Boulevard
13 near La Moine Street in Los Angeles County. Michery was driving southbound at a
14 minimum average speed of 39 MPH, and the lanes in his direction of travel were
15 separated from the northbound lanes by a raised concrete median with palm trees
16 running down the middle. For some reason, Michery input a left hand steer that
17 caused the left front tire and wheel to impact the curb, break the rim, and blowout the
18 tire. He hit the curb at a minimum average speed of 33 MPH. Because Michery
19 continued to steer left, the Expedition ultimately climbed up the raised concrete
20 median and continued to travel southbound until the deflated left front tire and wheel
21 struck the widened bulb base of the palm tree. Michery hit the tree at a minimum
22 average speed of 32 MPH. The collision caused damage to the left front of the
23 Expedition and to the A-pillar and cowl (the very strong structure below the bottom
24 of the windshield). The crash was significant enough to cause the frontal airbags to
25 deploy. The Expedition separated from the tree at a minimum average speed of 30
26 MPH, and it came to rest about 56 feet from the tree impact. The minimum total
27 vehicle change in velocity (Delta V) was 8-10 MPH. *See* Hoover Rpt. (Doc. 63-5).
28

At his deposition, Hoover explained how he determined the minimum Delta V of 8-10 MPH using a reliable methodology called the minimum given vector analysis, which provide the lowest, most conservative way to evaluate energy. Hoover Dep. at 24:19-25:10. Hoover further testified that it is more likely at least a 14 MPH Delta V impact with the tree. *See id.* Though Hoover's analysis is clear, in the motion in limine, Plaintiff incorrectly states that Hoover and the rest of Ford's experts have conceded the Michery crash was an 8-12 MPH Delta V event, which is really the minimum of what it must be. Hoover's speed and vector analyses are shown in exhibits to his deposition, entitled Speed Calculations and Vector Analysis. *See* Hoover Dep. at Ex. 16_14_01_ii and iv, attached as Ex. A.

To evaluate and support his accident reconstruction and to evaluate the testimony provided by Plaintiff David Michery as to his supposed steering, speed, and braking, Ford's experts performed a crash test. The subject crash test helped Hoover to evaluate the Delta V and crash pulse in part by comparing it to other well-documented crash tests. The subject Manufacturers like Ford run full-vehicle, full-barrier crash tests for frontal airbag design and performance. Ford ran those tests on the Expedition, including a test resulting in a 8 MPH Delta V "no fire" test in which the frontal airbags should not deploy and a 14 MPH Delta V "must fire" test in which the frontal airbags have to deploy. In each of these tests, the crash pulses are measured by the on-board instrumentation. The following chart compares the Michery crash, the subject crash test, the 8 MPH Delta V "no fire" test, and the 14 MPH Delta V "must fire" test.

|  | **Delta V** | **Frontal Airbags** |
|---|---|---|
| Michery Crash | > 8-10 MPH | Yes |
| Michery Crash Test | 8 MPH | No |
| 8 MPH "no fire" test | 8 MPH | No |
| 14 MPH "must fire" test | 14 MPH | Yes |

1    Hoover then compared the measured crash pulses of the instrumented crash
2 tests with red line as the subject crash test, the blue line as the 8 MPH "no fire" test,
3 and dotted green line as the 14 MPH "must fire" test:



17 Hoover Dep. at Ex. 16_21, attached as Ex. B.

18    By looking at the crash pulse comparing the Delta V on the vertical axis and
19 the time in milliseconds on the horizontal axis, the exhibit shows a lot about the crash
20 pulse for the Michery crash.  In the 14 MPH "must fire" test, it only took about 60
21 milliseconds to reach a Delta V of 14 MPH and the frontal airbags deployed.  In the
22 8 MPH "no fire" test, it took about 75 milliseconds (about 25% more time) to reach
23 the lower 8 MPH Delta V and the frontal airbags did not deploy.  In the subject crash
24 test, it took 150 milliseconds (more than double the time) to reach the lower 8 MPH
25 Delta V and the frontal airbags did not deploy.  This means that, because the frontal
26 airbags deployed in the Michery crash, the crash pulse had to be shorter and the Delta
27 V had to be more than the subject crash test and the 8 MPH "no fire" test.  While
28 Hoover was not questioned in great detail at his deposition, Hoover did explain the

above to Plaintiff counsel at his deposition.  *See* Hoover Dep. at 37:20-41:10.  The discussion basically concluded with an understanding of how and why the Michery crash pulse must necessarily be shorter or "more abrupt" (to borrow Plaintiff counsel's words):

> Q.   And now in Mr. Michery's case, which is – which was obviously some amount faster than your crash test, I think what you're saying is you have the same type of crushing down the side of the vehicle, but at some point in the actual crash in this case that tree reaches the A-pillar and then has a more rigid or more abrupt pulse and that's what sets the air bag off?
>
> A.   I agree with that.  I agree with that, yes.

*See* Hoover Dep. at 40:10-17.  Again, it is hard to imagine why Plaintiff would file a motion *in limine* claiming that Ford's experts failed to analyze the crash pulse, when Plaintiff deposed Hoover and asked the very leading question with a clear understanding of his analysis.

Contrary to Plaintiff's arguments without having any on-board instrumentation and more information than we have in this crash, particularly since the subject Michery crash vehicle was not preserved, it would be incredibly difficult, if even possible, to calculate the subject crash pulse down to the millisecond.  Generally, in the automotive engineering world, crash pulses are measured.  With the measured crash pulses available to him and based on a scientifically-reliable methodology, Hoover has been able to bracket the subject Michery crash pulse and opine as to it in comparison to other measured crash pulses.  The Court should deny Plaintiff's motion.

**III.    Krishnaswami's testimony is not a basis to exclude crash pulse.**

Ford Design Analysis Engineer Ram Krishnaswami is an automotive engineer with more than 20 years of experience in vehicle design and performance including crash safety, crashworthiness, crash testing, crash simulation and analysis, vehicle

performance, occupant kinematics, and restraints. Krishnaswami Rpt. and CV at 12-14 (Doc. 63-7). Krishnaswami has served a dual role in this case. He was identified as Ford's Rule 30(b)(6) representative. He also authored a report and was disclosed as Ford's vehicle design and performance expert. To avoid unnecessary duplication, the parties agreed to Plaintiff taking Krishnaswami's deposition, both as a Ford's Rule 30(b)(6) representative and disclosed expert, at one time. Plaintiff took Krishnaswami's deposition on April 28, 2017, about three weeks before Hoover's deposition on May 18, 2017.

During his deposition, Krishnaswami was asked questions about crash pulse in the context of airbag deployment and Delta V. Here is one example:

> Q. Okay. But what it's sensing is an 8- to 12-mile an hour change; correct?
>
> A. Over a very short duration in time. So it's sensing the change over a time domain that is not spread out. So, if the -- energy is spread out over a longer duration, then you won't expect an air bag to deploy. But the change is so sudden that it is such a short duration, so it is able to sense it.
>
> Q. And that's what you refer to as crash pulse?
>
> A. Correct.
>
> Q. That duration?
>
> A. Correct.
>
> Q. And what did one of the experts or Mr. Hoover determine the duration or at least an opinion of his opinion of the duration?
>
> A. I'm looking at his report here. Let me refresh my mind. I don't think he went into duration, but he went into discussion of speeds and other factors.
>
> Q. Did -- did you in your report have any opinion on the duration specifically?

1  A. Well, no. I don't have -- I don't think it was computed. The duration
2  was not computed, but it can be gleaned from the fact that the full frontal
3  impact let's say, into a rigid wall, these air bags are designed to deploy
4  at about 14-miles per hour closing, initial speed into a rigid wall, full flat
5  barrier.
6  So, if you look at it, like, you know, so that 14-mile per hour pulse is
7  spread over a certain duration of time. When that duration is shrunk;
8  right, like, you know, becomes shorter and shorter so at the lower
9  absolute delta V, at the shorter duration, you can trigger the air bags
10 because what it checks then is the sudden acceleration change and that's
11 what the sudden stop that happens on this vehicle causes the thing to
12 close.
13 So that will give you comparative in terms of duration or time duration
14 for the pulse.

Krishnaswami Dep. at 98:17-100:6. The discussion goes on to talk about the crash tests, pulses, etc. *See id.* at 1007-102:1. Krishnaswami described the same type of analysis that Hoover performed, which was part of his file at his deposition and marked as an exhibit. And Krishnaswami's analysis was correct, based on his own fundamental understanding of vehicle design and performance, having run 1000s of crash tests, participated on vehicle design teams, and reviewed dozens of Expedition crash tests, including those that Hoover analyzed as described above.

At best, Plaintiff is left with the fact that Krishnaswami did not know exactly what work Hoover performed because Plaintiff deposed Krishnaswami before Hoover and thus Krishnaswami could not have had Hoover's file. This is no reason to preclude Hoover or Krishnaswami from providing their expert testimony based on their experience and analyses. The Court should deny Plaintiff's motion.

## IV. CONCLUSION

Ford respectfully requests that this Court enter an Order denying Plaintiff's Motion in Limine No. 11 regarding crash timing.

Dated: September 19, 2017.

By */s/Bradley W. Petersen*
Matthew R. Rogers
Bradley W. Petersen
Attorneys for FORD MOTOR COMPANY

*Michery v. Ford Motor Company*
United States District Court, Action No. CV12-04957 RSWL (FFMx)

## CERTIFICATE OF SERVICE

  I certify that on September 19, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Robert J. Mandell, Esq.<br>The Mandell Law Firm<br>5950 Canoga Avenue, Suite 605<br>Woodland Hills, CA 91367<br>Tel: (818) 886-6600<br>Fax: (818) 772-9739 | Attorneys for Plaintiff,<br>David Michery |
| Robert J. Sullivan, Esq.<br>Sullivan, Morgan & Chronic, LLC<br>1600 Baltimore Avenue, Suite 200<br>Kansas City, MO 64108<br>Tel: (816) 221-9922<br>Fax: (816) 817-1962 | Attorneys for Plaintiff,<br>David Michery |

  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of an attorney admitted to practice in this case at whose direction the filing and service was made.

  Executed on September 19, 2017, at Phoenix, Arizona.

             */s/Pamela Nykiel*